**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| CATHY FROST, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-19-444-J |
| | ) |
| ANDREW SAUL, | ) |
| Commissioner of Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff, Cathy Frost, seeks judicial review of the Social Security Administration's (SSA) denial of her application for disability insurance benefits (DIB). The Commissioner has filed the Administrative Record (AR) [Doc. No. 11], and both parties have briefed their positions.[1] For the reasons set forth below, the Court reverses the Commissioner's decision and remands for further proceedings.

**I.    Procedural Background**

On July 19, 2018, an Administrative Law Judge (ALJ) issued an unfavorable decision finding Plaintiff was not disabled and, therefore, not entitled to DIB. AR 40-46. The Appeals Council denied Plaintiff's request for review. *Id.* at 1-8. Accordingly, the ALJ's decision constitutes the Commissioner's final decision. *See Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011). Plaintiff timely commenced this action for judicial review.

---

[1] Citations to the parties' briefs reference the Court's CM/ECF pagination.

## II. The ALJ's Decision

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009) (explaining process); *see also* 20 C.F.R. § 404.1520. Following this process, the ALJ first determined that Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of June 30, 2017, through her date last insured, which was also June 30, 2017. AR 42.

At step two, the ALJ determined Plaintiff suffers from the severe impairments of COPD and obesity. *Id*. At step three, the ALJ found that Plaintiff's impairments do not meet or medically equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1. *Id.* at 42-43.

The ALJ next determined Plaintiff's residual functional capacity (RFC), concluding that Plaintiff could perform medium work as defined in 20 C.F.R. § 404.1567(c) with the additional restrictions that Plaintiff occasionally can climb ladders, ropes, or scaffolds; frequently balance, stoop, kneel, crouch, or crawl; and must avoid fumes, odors, dusts, gases, and poor ventilation. *Id*. at 43.

At step four, the ALJ determined Plaintiff was able to perform her past relevant work as a home health aide and hardware sales clerk. *Id.* at 44. The ALJ then proceeded to make alternative findings at step five and, relying on the testimony of a vocational expert (VE), found Plaintiff can perform work existing in significant numbers in the national economy. *Id.* at 45. Specifically, the ALJ found Plaintiff can perform the requirements of representative jobs such as woman's apparel salesperson, and general merchandise sales. *Id.* Therefore, the ALJ concluded that Plaintiff is not disabled for purposes of the Social Security Act. *Id*. at 46.

## III. Claims Presented for Judicial Review

Plaintiff brings two allegations of error: (1) the ALJ failed to consider certain medical evidence; and (2) the ALJ failed to properly consider Plaintiff's obesity. Pl.'s Br. [Doc. No. 15]

at 3-8, 8-11. For the reasons set forth below, the Court reverses the Commissioner's decision and remands for further proceedings.

IV.     **Standard of Review**

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009); *see also Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (holding that the court only reviews an ALJ's decision "to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied" and in that review, "we neither reweigh the evidence nor substitute our judgment for that of the agency" (citations and internal quotation marks omitted)). Under such review, "common sense, not technical perfection, is [the Court's] guide." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012).

V.      **Analysis**

   A.     **Whether the ALJ failed to consider certain medical evidence**

At issue in Plaintiff's first claim of error is a certain Functional Capacity Questionnaire. Pl.'s Br. at 3-8 (citing AR 703). The Questionnaire conflicts with the ALJ's RFC in both exertional and non-exertional limitations. *Compare* AR 43, *with* AR 703. The Questionnaire also states that Plaintiff's impairments or treatment would cause her to be absent from work an average of "[a]bout four days a month." AR 703. At the administrative hearing, the VE testified that missing "more than two days of work per month" "would be considered excessive, and a person would not be able to maintain employment." AR 84. Accordingly, if the ALJ had accepted the limitations in the Questionnaire, then she could not have determined Plaintiff's RFC as she did, could not have found that Plaintiff could maintain employment, and could not have found Plaintiff not disabled.

The ALJ did not, however, accept the limitations in the Questionnaire; indeed, Plaintiff argues that the ALJ "wholly failed" to consider the Questionnaire at all. Pl.'s Br. at 3 (citing AR 703). An ALJ must "evaluate every medical opinion" in the record. 20 C.F.R. § 404.1527(c) ("Regardless of its source, we will evaluate every medical opinion we receive.").[2] The question here is whether the ALJ properly considered the Questionnaire.

Plaintiff's administrative record is over 700 pages, but the ALJ's discussion of the medical record comprises less than one page. The ALJ began her discussion of Plaintiff's medical record by stating that Plaintiff's "statements about the intensity, persistence, and limiting effects of his or her symptoms [sic] . . . are inconsistent because [Plaintiff's] alleged onset date is also the date she was last insured." AR 44. As set forth above, that date is June 30, 2017. The ALJ continued, "[c]onsequently, the entirely of the documentary medical record addresses either the period prior to her alleged onset date (Exhibits 1F through 9F) or after she was last insured (Exhibits 8F through 12F)." *Id.* The ALJ then briefly discussed the determinations by the state agency reviewers and six medical records, dated from July 14, 2016, through October 17, 2017. *Id.* The evidence the ALJ discussed includes medical records from "the period prior to [Plaintiff's] alleged onset date . . . or after she was last insured," thus indicating that the ALJ accepted medical evidence from outside the insured period. The ALJ did not discuss the Questionnaire. *See id.*

---

[2] The Questionnaire is signed by Carmen Phillippi, APRN, CNP. AR 703. For claims filed before March 27, 2017, such as Plaintiff's, a nurse practitioner such as Ms. Phillippi is not an "acceptable medical source" who can provide a medical opinion. *See* 20 C.F.R. §§ 404.1503, .1527. However, there also appears to be a second signature on the document, which Plaintiff contends is a co-signature by Dan Criswell, M.D., and which contention Defendant disputes. *Id.*; Pl.'s Br. at 3; Pl.'s Reply [Doc. No. 20] at 2; Def.'s Br. [Doc. No. 19] at 7, n.2. As Plaintiff correctly notes, it is the SSA itself that identified the "Physical RFC Assessment" as evidence from "Dan Criswell MD and Carmen Phillippi APRN CNP." Pl.'s Reply at 2; *see also* AR 51 (exhibit list attached to ALJ's decision). As such, the Court finds it reasonable to assume that the second signature is that of Dr. Criswell. Moreover, even if the Questionnaire were only signed by Ms. Phillippi, the ALJ would still be required to consider it. *See* 20 C.F.R. § 404.1527(c), (f).

Defendant argues that the ALJ's statement referencing medical evidence from "after [Plaintiff] was last insured" includes the Questionnaire, which is dated approximately nine months after Plaintiff's insured period and is found in Exhibit 12F. Def.'s Br. at 8 (citing AR 44). Defendant further argues that "[i]mplicit in the ALJ's rationale is that [the Questionnaire] did not reflect Plaintiff's abilities on June 30, 2017." *Id.* The ALJ, however, did not say this and the Court cannot accept post-hoc explanations. *See Grogan v. Barnhart*, 399 F.3d 1257, 1263 (10th Cir. 2005) ("[T]he district court may not create post hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself.").

Moreover, with respect to what the ALJ did say, a claim of disability may be supported by direct evidence or indirect evidence. *See Baca v. Dep't of Health & Human Servs.*, 5 F.3d 476, 479 (10th Cir. 1993) (discussing both direct and indirect evidence). Without doubt, medical records during an insured period are direct evidence of a claimant's condition during that period. *Baca*, 5 F.3d at 479. But here the insured period was only one day and there are no medical records from that exact date. *See* AR 377-703. Medical records that predate or postdate the insured period, however, may constitute indirect evidence of a claimant's condition during the insured period and, therefore, should also be considered. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1215, 1217 (10th Cir. 2004) (the ALJ should consider evidence from an earlier time period as it may be relevant to whether the claimant is disabled); *Baca*, 5 F.3d at 479 (evidence beyond the date last insured may be considered to the extent it sheds light on the nature and severity of claimant's condition during the insured period). As such, the Questionnaire should not be disregarded simply because it postdates Plaintiff's insured period. *See Miller v. Chater*, 99 F.3d 972, 977 (10th Cir. 1996) (finding that it was legal error if the ALJ did not consider medical evidence because it postdated

the date last insured); *Baca*, 5 F.3d at 479 (finding error when the ALJ ignored medical records dated within fourteen months of plaintiff's insured period).

Instead, if the Questionnaire provides information about the insured period, then the ALJ should have considered it. Defendant argues that the ALJ's "implicit" decision that the Questionnaire did not reflect Plaintiff's abilities on June 30, 2017, was reasonable because Ms. Phillippi did not treat Plaintiff for the impairments referenced on the Questionnaire: diabetes, hypothyroidism, acid reflux, depression, and hyperlipidemia. Def.'s Br. at 9. Defendant further argues that the Questionnaire can be interpreted as meaning that these impairments began after the insured period. *Id.* at 9-10. But such arguments do not comport with the facts. On March 16, 2017 (approximately three months before the insured period), Ms. Phillippi treated Plaintiff for "multiple problems" including diabetes, hypothyroidism, hyperlipidemia, and depression; Ms. Phillippi also instructed Plaintiff to continue taking medication for acid reflux, which she had discussed with Plaintiff at her two prior appointments. AR 580-591 (Mar. 16, 2017, treatment notes); *see also* AR 564-70 (Dec. 8, 2016, treatment notes), 573-79 (Jan. 27, 2017, treatment notes). Similarly, on September 14, 2017 (approximately three months after the insured period), Ms. Phillippi treated Plaintiff for "multiple problems" including diabetes, hypothyroidism, hyperlipidemia, and acid reflux. AR 592-599 (Sept. 14, 2017, treatment notes). It is evident that Ms. Phillippi treated Plaintiff for the relevant impairments both before and after the insured period. As such, Ms. Phillippi arguably had knowledge about Plaintiff's impairments and any associated limitations during the insured period, thus making the Questionnaire relevant to the insured period. Accordingly, Defendant's arguments are unpersuasive.

Because the Questionnaire is relevant to the insured period, the ALJ should have considered and discussed it. *See* 20 C.F.R. § 404.1527(c), (f); *Baca*, 5 F.3d at 479. "The record

must demonstrate that the ALJ considered all of the evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). Though "an ALJ is not required to discuss every piece of evidence," she must "discuss the uncontroverted evidence [she] chooses not to rely upon, as well as significantly probative evidence [she] rejects." *Id*. at 1009-10. And an ALJ may not pick and choose among uncontroverted evidence taking only those parts that are favorable to a finding of nondisability, but instead must consider all significantly probative evidence in the record. *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) ("It is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."). The ALJ's decision does not meet these standards. Because the ALJ failed to properly consider the Questionnaire and did not provide adequate explanation for such omission, the ALJ did not demonstrate that she properly considered all of the evidence. Accordingly, the case must be remanded for further consideration.

Additionally, if an ALJ completely rejects an opinion from a treating physician, she must give "specific, legitimate reasons" for doing so. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (internal citations omitted). As set forth above, the second signature on the Questionnaire may be that of Dr. Criswell, in which case the Questionnaire may qualify as an opinion of a treating physician. Under SSA regulations, treating physician opinions hold a special status and are subject to a specific evaluation process. *E.g.*, *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003). On remand, the ALJ shall determine whether the Questionnaire is indeed a treating physician opinion and evaluate it accordingly.

**B.     Whether the ALJ erred in evaluating Plaintiff's obesity**

The Court does not address Plaintiff's remaining argument because the ALJ's analysis may be affected on remand after the ALJ properly considers the evidence. *See Watkins*, 350 F.3d at

7

1299 (finding the court need not reach the merits of claims that "may be affected by the ALJ's treatment of the case on remand").

## VI. Conclusion

For the reasons set forth, the Commissioner's decision is REVERSED and REMANDED. A separate judgment shall be entered.

ENTERED this 7th day of January, 2020.

BERNARD M. JONES
UNITED STATES DISTRICT JUDGE